WILLIAMS v HORTON

Docket No. 100700. Submitted December 7, 1988, at Detroit. Decided
February 21, 1989. Leave to appeal applied for.

Joseph Williams, administrator of the estate of Glenda Mae
Williams, deceased, brought an action in the Wayne Circuit
Court against Carolyn Horton and Gloria Whittington seeking
damages for the decedent's death based on the allegation that
Horton, a delinquency services worker in the special treatment
section within the Department of Social Services, and Whitting-
ton, Horton's supervisor, were negligent in the placement and
supervision of Glenda Mae Williams, a ward of the state, and
that that negligence was a proximate cause of Williams' death.
The trial court, Paul S. Teranes, J., found that the duties of
Mrs. Horton which were alleged to have been negligently
performed were ministerial in nature and, thus, that the de-
fense of governmental immunity did not apply. A jury verdict
was thereafter entered in favor of plaintiff against defendant
Horton only. The defendant appealed.

The Court of Appeals *held:*

1. The trial court erred in determining that the defendant
was not protected from tort liability by the doctrine of govern-
ment-employee immunity.

2. The facts indicate that the activity complained of was
discretionary in nature because it involved the making of
decisions and assessments requiring a high degree of personal
deliberation and judgment. While defendant may have acted
negligently in attempting to place the decedent in a suitable
custodial environment, her acts were cloaked with immunity.

Reversed.

1. GOVERNMENTAL IMMUNITY — TORTS — GOVERNMENT EMPLOYEES.

Lower-level government officials, employees and agents are im-
mune from tort liability only when they are (1) acting during
the course of their employment and acting, or reasonably

REFERENCES

Am Jur 2d, Public Officers and Employees §§ 358 *et seq.*
See the Index to Annotations under Governmental Immunity or
Privilege; Privileges and Immunities.

believe they are acting, within the scope of their authority, (2) acting in good faith, and (3) performing discretionary, as opposed to ministerial, acts (MCL 691.1407; MSA 3.996[107]).

2. GOVERNMENTAL IMMUNITY — TORTS — GOVERNMENT EMPLOYEES.

The activity of a lower-level government employee may be determined to constitute discretionary activity for purposes of applying the doctrine of government-employee immunity from tort liability where the activity involves the making of decisions and assessments requiring a high degree of personal deliberation and judgment (MCL 691.1407; MSA 3.996[107]).

*Frederick M. Rosen,* and *Gromek, Bendure & Thomas* (by *Neal C. Villhauer*), of Counsel, for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Clive D. Gemmill,* Assistant Attorney General, for defendant.

Before: WAHLS, P.J., and McDONALD and C. W. SIMON, JR.,* JJ.

WAHLS, P.J. Defendant Carolyn Horton (defendant), a delinquency services worker in the special treatment section within the Department of Social Services, appeals from a verdict rendered from the bench by the Wayne Circuit Court on April 1, 1987, in favor of the estate of Glenda Mae Williams, deceased, through its administrator, Joseph Williams.

The trial court, after rejecting defendant's defense of government-employee immunity, found that defendant was negligent in the placement and supervision of fifteen-year-old Glenda Mae Williams and that that negligence was a proximate cause of Williams' death on April 3, 1975. On that date, Williams' cousin and several of her cousin's friends beat Williams to death after Williams

---

* Circuit judge, sitting on the Court of Appeals by assignment.

refused to admit having stolen one of her cousin's welfare checks. At the time of her death, Williams was a ward of the state who had left a group home, been refused shelter in her parents' house, and sought harbor in her cousin's residence. Since the trial court also found Williams to have been sixty percent comparatively negligent, plaintiff was awarded $40,000 of the original $100,000 award. We hold that the trial court erred in finding that defendant was not protected from tort liability by the doctrine of government-employee immunity and, accordingly, we reverse the trial court's verdict.

The *locus classicus* of the test to be applied when determining whether low-level government employees are immune from tort liability under MCL 691.1407; MSA 3.996 (107) is *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 633-634; 363 NW2d 641 (1984), which provides:

> Lower level officials, employees, and agents are immune from tort liability only when they are
> 1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;
> 2) acting in good faith; and
> 3) performing discretionary, as opposed to ministerial acts.

In the present case, the only dispute is whether the acts complained of were "discretionary" or "ministerial." In discussing the differences between these two terms, the *Ross* Court stated at pp 634-635:

> "Discretionary" acts have been defined as those which require personal deliberation, decision, and judgment. Prosser [Torts (4th ed)], § 132, p 988. This definition encompasses more than quasi-judi-

cial or policy-making authority, which typically is granted only to members of administrative tribunals, prosecutors, and higher level executives. However, it does not encompass every trivial decision, such as "the driving of a nail," which may be involved in performing an activity. For clarity, we would add the word "decisional" so the operative term would be "discretionary-decisional" acts.

"Ministerial" acts have been defined as those which constitute merely an obedience to orders or the performance of a duty in which the individual has little or no choice. [See Prosser, *supra,* p 990]. We believe that this definition is not sufficiently broad. An individual who decides whether to engage in a particular activity and how best to carry it out engages in discretionary activity. However, the actual execution of this decision by the same individual is a ministerial act, which must be performed in a nontortious manner. In a nutshell, the distinction between "discretionary" and "ministerial" acts is that the former involves significant decision-making, while the latter involves the execution of a decision and might entail some minor decision-making. Here too, for clarity, we would add the word "operational" so the operative term would be "ministerial-operational" acts.

In concluding that defendant's acts in this case were ministerial, and therefore not entitled to the protection of immunity, the trial court stated:

The third issue is the pivotal issue, as I see it in this case, and that is whether or not the actions of [Mrs.] Horton were ministerial, or were they discretionary. The Defendant argues that the acts were discretionary and, therefore, covered by governmental immunity. The Supreme Court said that if a lower level official or government employee acts within a discretionary manner, then there's governmental immunity. If it's ministerial, then governmental immunity does not apply.

In looking at the duties of Mrs. Horton in taking

care of Miss Williams, her main duty was to have a placement for Miss Williams. Those duties were set forth by department policy—when you're under intensive care, that the main duty was to try to place the child eventually with the parents, or if not with the parents, intermediary—the intermediary duty would be to place the child in a suitable home.

I would find that that effort of placing the child would be a ministerial effort. It would not be a situation where Mrs. Horton had to make a discretionary decision as to what to do with the child once she's under her care. The guidelines were somewhat set forth, and her duties were to administer those guidelines and therefore it would be a ministerial duty.

I think it's analogous to the case in the Court of Appeals where you have the discretionary question of whether or not a police officer should or should not arrest. Once that decision is made, then you have the ministerial duty of actually performing the arrest.

Here, you have the same analogy. The decision to place Miss Williams had already been made and was under the guidelines of social services. [Mrs.] Horton had to carry out that ministerial duty of placing and supervising Glenda Williams. So, therefore, since it is a ministerial duty, I find that the defense of governmental immunity does not apply.

We find that, to the extent plaintiff's case is based on the negligent placement of Williams, defendant is entitled to the protection of immunity from tort liability. In settling upon a proper placement for Williams, significant decision-making was required on the part of defendant. Williams was in an intensive treatment program for state wards. A goal of that program is to keep wards within their community until placement in the home of a parent or parents can be arranged. In determining

a proper placement, defendant had to consider and weigh several factors, including the goal of the intensive treatment program, Williams' history, state policies, the suitability of local and available placement openings, and the need for care in a structured setting or environment. In *Walker v Gilbert,* 160 Mich App 674, 679-680; 408 NW2d 423 (1987), lv den 430 Mich 895 (1988), this Court, in upholding a trial court's grant of summary disposition in favor of social services employees on the basis of governmental, or public employee, immunity, stated:

> [W]e believe that conduct of the state defendants in this case was discretionary-decisional, thereby qualifying for immunity under *Ross.* Their personal deliberations, decisions and judgments were required during three separate phases of child placement and custody: (1) selection of a foster family; (2) initial placement of the minor plaintiff with the Gilberts; and (3) continuation of the Gilbert placement after receiving and investigating reports of abuse.
>
> Dss employees are vested with broad powers regarding who may be certified as a foster parent and which child will go to which home. Before placing a child in foster care, Dss must be "satisfied as to the need for a child care organization, its financial stability, the good moral character of the applicant, and that the services and facilities are conducive to the welfare of the children." MCL 722.115(1); MSA 25.358(15)(1). Agency regulations require Dss to choose a foster home where there is a "wholesome atmosphere," and where the persons in charge are of "suitable temperament to care for children" and understand the needs of children. 1979 AC, R 400.193(2) and (3). Evaluating potential foster families on such factors as "wholesome atmosphere," "suitable temperament" and understanding the needs of children, to name only a few of many factors listed in the agency regulations,

necessarily requires of the DSS decision-maker personal and subjective judgment.

Because several foster homes were available, significant decision-making was involved in selecting the Gilberts as a foster family, and that decision process remained significant even in the face of limited vacancies at the time of placement. Significant decision-making was also involved in maintaining the Gilbert placement after investigation of reported abuse: it was not until after a DSS meeting, an investigation, and the Gilberts' admission of their error and promise to attend counseling that DSS decided to continue the Gilbert placement.

We believe that in this case, as in *Walker,* the placement of Williams by defendant constituted a discretionary activity because it involved the making of decisions and assessments requiring a high degree of personal deliberation and judgment. Clearly, the placement of Williams was not, as may be inferred from certain statements of the trial court, limited merely to fulfilling, by way of routine and unthinking obedience, the order to "place the child" in this case.

Moreover, we find that defendant's negligence—assuming that the trial court did not err in finding negligence—in carrying out or performing all the actions determined to be necessary in situating Williams in a suitable placement did not preclude defendant from successfully asserting the protection of immunity from tort liability. As stated recently by the Supreme Court, "[t]he very concept of immunity presupposes that the activities complained of may have been negligently performed—i.e., in violation of the requisite standard of care," and "[i]f every act which deviates from a professional norm were to be categorized as 'ministerial,' immunity would seldom shield professional discretion." *Canon v Thumudo,* 430 Mich 326, 335; 422

NW2d 688 (1988). Thus, while defendant may well have acted negligently in attempting to place Williams in a suitable custodial environment, her acts were cloaked with immunity. In addition, we observe that in plaintiff's appellate brief it is emphasized that "[p]laintiff's allegations center on defendant's oversight and inattention with respect to implementing her purported treatment plan," actions characterized by plaintiff as ministerial. Plaintiff does not, however, recite in detail the specific acts constituting such oversight and inattention, relying instead on general statements, such as the assertions that defendant "failed to provide the 'desperately needed' structured setting once defendant determined that a structured setting was needed," "failed to provide the quality of supervision specifically required of a caseworker toward a ward committed to the care of the 'Special Treatment' program," and " 'Sat idly by,' or at least 'waited too long' in carrying out her initial decision." Such assertions are not very helpful in aiding a court asked to rule on the nature of a public employee's actions. As stated by the *Canon* Court, "[a] plaintiff who merely asserts that a governmental employee has failed 'to execute and/or supervise' a treatment plan describes only the general nature of [the] activity and falls short of providing a basis for ruling upon the discretionary/ministerial distinction." 430 Mich 343.

Having concluded that the trial court erred in finding that defendant was not protected from tort liability by the doctrine of government-employee immunity, we need not address the two remaining issues raised on appeal.

Reversed.